**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| _____ | ) | FILED: MAY 13, 2009 |
| FEDERAL TRADE COMMISSION, | ) | 09CV2927 |
|  | ) | JUDGE GRADY |
| Plaintiff, | ) Civ. No. | MAGISTRATE JUDGE ASHMAN |
|  | ) | CH |
| v. | ) |  |
|  | ) |  |
| TRANSCONTINENTAL WARRANTY, | ) |  |
| INC., a Delaware corporation, and | ) | **COMPLAINT FOR INJUNCTIVE** |
|  | ) | **AND OTHER EQUITABLE** |
| CHRISTOPHER D. COWART | ) | **RELIEF** |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint, alleges as follows:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101, *et seq.*, to secure temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over this matter pursuant to 28

U.S.C. §§ 1331, 1337(a), and 1345, as well as pursuant to 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.     Venue in the United States District Court for the Northern District of Illinois is proper under 28 U.S.C. § 1391(b) and (c), as well as under 15 U.S.C. § 53(b).

**THE PARTIES**

4.     Plaintiff, the Federal Trade Commission, is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41 - 58. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC is also charged with enforcement of the Telemarketing Act, 15 U.S.C. §§ 6101 - 6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing acts or practices. The Commission is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief, including restitution for injured consumers and disgorgement, as may be appropriate in each case. 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b).

5.     Defendant Transcontinental Warranty, Inc. ("Transcontinental"), is a Delaware corporation with its principal place of business located in Fort Lauderdale, Florida. Transcontinental transacts or has transacted business in this District and throughout the United States.

6.     Defendant Christopher D. Cowart is an officer, director, and/or owner of Defendant Transcontinental. At all times material to this complaint, acting alone or in

2

concert with others, he has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Transcontinental, including the acts and practices set

forth in this complaint.  He resides in Florida and transacts, or has transacted, business in this

District and throughout the United States.

## COMMERCE

7.     At all times relevant to this complaint, Defendants have maintained a

substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4

of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

8.     Since at least 2007, Defendants have sold motor vehicle service contracts,

which they characterize as "extended automobile warranties," to consumers throughout the

United States.  Defendants contact consumers through direct mail and telemarketing calls.

9.     Defendants, directly or through one or more intermediaries, initiate telephone

calls to consumers throughout the United States to induce sales of Defendants' "extended

automobile warranties."  In many instances, the telemarketing calls are initiated by live

representatives.  In many other instances they are initiated using a telemarketing service that

delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling."

10.     Defendants employ a number of tactics designed to mislead consumers into

believing that they are affiliated with the consumer's automobile dealership or manufacturer,

that the consumer's automobile warranty is about to expire, and that Defendants are

authorized to or have the ability to continue or extend the consumer's original warranty from

the manufacturer.

11.     In numerous instances, Defendants' telemarketing calls deliver prerecorded messages that inform recipients that their automobile warranty is expiring, or is about to expire, and then give call recipients the option to speak with a "warranty specialist." Defendants often have no information on whether a call recipient's warranty is expiring or not.

12.     Both in the robocalls and in conversations with live representatives, Defendants, directly or through one or more intermediaries, have represented, expressly or by implication, that they are affiliated with the call recipient's automobile dealership or manufacturer.  Defendants are not affiliated with call recipients' automobile dealerships or manufacturers.

13.     In other instances, Defendants indicate an affiliation with the consumer's dealership or manufacturer by purporting to possess specialized knowledge about the consumer's automobile, including that expiration of the consumer's automobile warranty is imminent.  For example, Defendants send postcard solicitations to consumers which prominently identify the make, model, and year of the consumer's automobile, and urge the consumer to "renew" their original warranty.

14.     In some instances, Defendants expressly claim to be calling from the consumer's automobile dealership or manufacturer.  Defendants' telemarketers routinely hang up on any consumers who question Defendants' affiliation with the consumer's automobile dealership or manufacturer.

4

15.     Both in the robocalls and in conversations with live representatives, Defendants, directly or through one or more intermediaries, have represented, expressly or by implication, that the "warranties" they are offering will continue or extend the consumer's original warranty from the manufacturer.

16.     Defendants are not authorized to, and do not, continue or extend the consumer's original warranty from the manufacturer.  The motor vehicle service contracts sold by Defendants typically cost between $2,000 and $3,000 and are provided by unrelated third parties.

17.     Through their telemarketing campaigns, Defendants, directly or through one or more intermediaries, also have caused millions of consumers to receive deceptive telemarketing solicitations in blatant violation of the TSR, including the National Do Not Call Registry, and the FTC Act.  These illegal telephone calls have generated tens of thousands of complaints from consumers, businesses, government entities, and emergency management call centers.

**Defendants' Illegal Dialing Practices**

18.     Through telemarketing calls to consumers throughout the United States, Defendants engage in a number of illegal dialing practices.  Among other things, Defendants, directly or through one or more intermediaries, regularly call consumers who have previously asked Defendants not to call them again or who have registered on the National Do Not Call Registry.  They also illegally abandon calls and regularly "spoof" their calls by transmitting phony Caller ID information so that call recipients do not know the source of the

calls.

19.     In numerous telemarketing calls placed since at least 2007,

Defendants, directly or through one or more intermediaries, have not transmitted their

telephone number or name to call recipients' "Caller ID" services, nor have they transmitted

their name or service telephone number.  Instead, Defendants, directly or through one or

more intermediaries, have transmitted non-functional or phony telephone numbers to the

Caller ID services used by the recipients of the telemarketing calls.

20.     Because Defendants, directly or through one or more intermediaries, transmit

non-functional or false caller identification information, they do not transmit a number that

call recipients can use to identify the seller or telemarketer, or that call recipients can use to

contact the seller or telemarketer to ask to be placed on the seller's entity-specific do not call

list.

21.     Since at least 2007, Defendants, directly or through one or more

intermediaries, have made numerous outbound telemarketing calls in which they failed to

connect the call to a sales representative within two (2) seconds of the call recipient's

completed greeting.  Instead of connecting the recipient of the call to a sales representative,

Defendants, directly or through one or more intermediaries, have delivered a prerecorded

voice message to the call recipient.

22.     Since at least 2007, Defendants, directly or through one or more

intermediaries, have placed telemarketing calls delivering prerecorded voice messages that

fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person

receiving the call:  the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.

23.     Since at least 2007, Defendants, directly or through one or more intermediaries, have initiated outbound telephone calls to persons who previously have stated that they do not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.

24.     Since at least 2007, Defendants, directly or through one or more intermediaries, have initiated outbound telephone calls to telephone numbers on the National Do Not Call Registry.

25.     Since at least 2007, Defendants, directly or through one or more intermediaries, have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within area codes that are included in the National Do Not Call Registry.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

26.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations or deceptive omissions of material facts constitute deceptive acts or practices prohibited by Section 5(a).

## COUNT ONE

### Misrepresentation of Material Facts

27.     In numerous instances, in the course of telemarketing products and services, Defendants have represented, expressly or by implication, that:

7

a.      they are calling from, on behalf of, or are otherwise affiliated with the manufacturer or dealer of the consumer's automobile;

b.      expiration of the consumer's original automobile warranty is imminent; and

c.      they are authorized to, and are, selling warranties that continue or extend the consumer's original warranty from the manufacturer.

28.      In truth and in fact, in numerous of those instances:

a.      Defendants are not calling from, nor on behalf of, nor are they otherwise affiliated with the manufacturer or dealer of the consumer's automobile;

b.      expiration of the consumer's original automobile warranty is not imminent; and

c.      Defendants are not authorized to, and do not, sell warranties that continue or extend the consumer's original warranty from the manufacturer.

29.      Therefore, the representations set forth in Paragraph 27 are false and misleading and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act.

## THE TELEMARKETING SALES RULE

30.      Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101, *et seq.*, in 1994. On August 16, 1995, the FTC adopted the Telemarketing Sales Rule, 16 C.F.R. Part 310, which became effective on December 31, 1995. On January 29,

2003, the FTC amended the TSR. 68 Fed. Reg. 4580, 4669. On August 29, 2008, the FTC

amended the TSR again. 73 Fed. Reg. 51164, 51204.

31. Defendants are "seller[s]" or "telemarketers" engaged in "telemarketing," and

Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone

calls" to consumers, as those terms are defined in the TSR, 16 C.F.R. § 310.2(u), (z), (bb)

and (cc).

32. The TSR prohibits sellers and telemarketers from misrepresenting, directly or

by implication, any material aspect of the nature or central characteristics of the goods or

services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

33. The TSR prohibits sellers and telemarketers from misrepresenting, directly or

by implication, that they are affiliated with, or endorsed or sponsored by, any person or

government entity. 16 C.F.R. § 310.3(a)(2)(vii).

34. The TSR prohibits sellers and telemarketers from making any false or

misleading statement to induce any person to pay for goods or services. 16 C.F.R.

§ 310.3(a)(4).

35. The TSR requires telemarketers in an outbound telephone call to disclose

truthfully, promptly, and in a clear and conspicuous manner the following information:

    a.    the identity of the seller;

    b.    that the purpose of the call is to sell goods or services; and

    c.    the nature of the goods or services.

16 C.F.R. § 310.4(d)(1), (2), and (3).

9

36.     Among other things, the TSR, as amended in 2003, established a "do-not-call" registry, maintained by the Commission (the "National Do Not Call Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at *www.donotcall.gov*.

37.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at *www.donotcall.gov*, or by otherwise contacting law enforcement authorities.

38.     Since October 17, 2003, sellers and telemarketers have been prohibited from calling numbers on the Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

39.     Since December 31, 1995, sellers and telemarketers have been prohibited from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

40.     Since October 17, 2003, sellers and telemarketers have been generally prohibited from calling any telephone number within a given area code unless the seller first has paid the annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.  16 C.F.R. § 310.8(a) and (b).

41.     Since January 29, 2004, sellers and telemarketers have been prohibited from

failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. 16 C.F.R. § 310.4(a)(7).

42.     Since October 1, 2003, sellers and telemarketers have been prohibited from "abandoning" any outbound telephone call. 16 C.F.R. § 310.4(b)(1)(iv). An outbound telephone call is "abandoned" if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting. *Id.*

43.     Since December 1, 2008, sellers and telemarketers have been prohibited from initiating an outbound telephone call that delivers a prerecorded message unless, among other things, the message immediately discloses: 1) the identity of the seller; 2) that the purpose of the call is to sell goods or services; and 3) the nature of the goods or services. 16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

44.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT TWO

### Making False and Misleading Statements

45.     In numerous instances, in the course of telemarketing goods and services,

Defendants have made false and misleading statements, directly or by implication, to induce consumers to pay for goods or services, including, but not limited to, misrepresentations that:

        a.      they are calling from, on behalf of, or are otherwise affiliated with the manufacturer or dealer of the consumer's automobile;

        b.      expiration of the consumer's original automobile warranty is imminent; and

        c.      they are authorized to, and are, selling warranties that continue or extend the consumer's original warranty from the manufacturer.

46.      Defendants' practices as alleged in Paragraph 45 are deceptive telemarketing acts or practices in violation of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), 310.3(a)(2)(vii), and § 310.3(a)(4).

## COUNT THREE

### Ignoring Do Not Call Requests

47.      In numerous instances, in connection with telemarketing, Defendants have initiated, or caused a telemarketer to initiate, an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of Defendants, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT FOUR

### Ignoring the National Do Not Call Registry

48.      In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to be engaged, in initiating an outbound telephone call to a

person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT FIVE

### Abandoning Calls

49.     In numerous instances, in connection with telemarketing, Defendants have abandoned, or caused a telemarketer to abandon, an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iv).

## COUNT SIX

### Failing to Transmit Caller ID

50.     In numerous instances, in connection with telemarketing, Defendants have failed to transmit, or have caused telemarketers to fail to transmit, the telephone number and name of the telemarketer or of Defendants to any caller identification service in use by a recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(7).

## COUNT SEVEN

### Failing to Make Required Oral Disclosures

51.     In numerous instances, in the course of telemarketing products and services, Defendants have made or caused telemarketers to make outbound telephone calls in which the telemarketer failed to disclose promptly and in a clear and conspicuous manner to the person receiving the call:

    a.     the identity of the seller;

13

      b.       that the purpose of the call is to sell goods or services; and

      c.       the nature of the goods or services.

52.     Defendants' practice as alleged in Paragraph 51 is an abusive telemarketing practice that violates the TSR, 16 C.F.R. § 310.4(d)(1), (2), and (3).

## COUNT EIGHT

### Initiating Unlawful Prerecorded Messages

53.     In numerous instances, on or after December 1, 2008, in connection with telemarketing, Defendants have initiated, or caused a telemarketer to initiate, outbound telephone calls delivering prerecorded messages that do not promptly provide the disclosures required by § 310.4(d) of the TSR.

54.     Defendants' practice as alleged in Paragraph 53 is an abusive telemarketing practice that violates the TSR, 16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

## COUNT NINE

### Failing to Pay National Registry Fees

55.     In numerous instances, in connection with telemarketing, Defendants have initiated, or caused a telemarketer to initiate, outbound telephone calls to a telephone number within a given area code although Defendants have not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

**CONSUMER INJURY**

56.     Consumers throughout the United States have suffered and continue to suffer injury as a result of Defendants' unlawful acts and practices.  In addition, Defendants have been unjustly enriched as a result of their unlawful practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, enrich themselves unjustly, and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

57.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission of contracts and restitution, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of law enforced by the FTC.

58.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, the Federal Trade Commission, requests that this Court, as authorized by Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and pursuant to its own equitable

powers:

(a) Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, and appointment of a receiver;

(b) Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

(c) Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

(d) Award plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

DAVID SHONKA
Acting General Counsel

DATED: May 13, 2009            /s/David A. O'Toole
                               DAVID A. O'TOOLE
                               IRENE I. LIU
                               Federal Trade Commission
                               55 West Monroe Street, Suite 1825
                               Chicago, Illinois 60603
                               (312) 960-5634 [telephone]
                               (312) 960-5600 [facsimile]

16