**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 09 C 2927 |
| | ) |
| TRANSCONTINENTAL WARRANTY, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the court are (1) the federal equity receiver's motion to require First Regional Bank ("FRB") to turn over funds, and (2) Electronic Clearing House, Inc.'s ("ECHO") motion for relief from our preliminary injunction. We grant the receiver's motion and deny ECHO's, for the reasons explained below.

**BACKGROUND**

In a complaint filed May 13, 2009 the Federal Trade Commission ("FTC") alleged that Transcontinental Warranty, Inc. ("Transcontinental") operated a telemarketing scheme to fraudulently induce consumers to purchase vehicle service contracts. On May 14, 2009 we granted the FTC's request for a temporary restraining order enjoining Transcontinental's alleged scheme and freezing its assets. (See Temporary Restraining Order with Asset Freeze and Other Equitable Relief ("TRO") at 4-8.) We

also appointed a temporary receiver to assume control of the company, and directed "Defendants or any other person or entity" holding receivership assets to turn them over to the receiver immediately upon service of our order. (TRO at 13, 19.)[1] At the time that we entered the TRO Transcontinental maintained three bank accounts at FRB holding approximately $418,000. (See "Declaration of Information," dated May 20, 2009, attached as Ex. A to Turnover Mot.) The bulk of that money is being held in a "reserve account" that was established by Transcontinental pursuant to an agreement with FRB and ECHO. Both FRB and ECHO claim an interest in the account and object to the receiver's turnover motion.

ECHO and FRB are parties to a Merchant Marketing and Processing Services Agreement (the "ECHO/FRB Agreement") pursuant to which ECHO has agreed to solicit merchants to accept Visa and MasterCard credit cards. (See ECHO/FRB Agreement, attached as Ex. A to Aff. of Debbie Johnson (hereinafter "Johnson Aff.").) The agreement requires ECHO to reimburse FRB for "chargebacks" — money that FRB owes to card-issuing banks in the event that a card-user disputes a credit-card charge for services rendered by one of the merchants with whom ECHO and FRB have a contract. (Id. at §

---

[1]/ We subsequently entered a stipulated preliminary injunction on substantially the same terms as the TRO. (See Stipulated Preliminary Injunction Order with Asset Freeze and Other Equitable Relief (34).) Transcontinental and its principal, Christopher D. Cowart, have since stipulated to a final judgment and a permanent injunction without admitting the complaint's allegations. (See Stipulated Final Judgment and Order for Permanent Injunction (74-2) at 2.) The receiver remains in place. (Id. at 21.)

6.5.1.)[2]  The agreement also requires ECHO to establish with FRB a "reserve account" that FRB is entitled to draw upon to recover chargebacks.  (Id. at §§ 6.4.5 & 6.5.1.)  ECHO, in turn, has the right to demand that the Bank "assign to ECHO any and all Merchant agreements . . . and reserve accounts pertaining to each Merchant for which [FRB] has received a Chargeback loss."  (Id. at 6.5.1.)[3]

One such "Merchant agreement" is the Bank Card/Check Services Agreement (the "Merchant Agreement") between ECHO and Transcontinental.  (See Merchant Agreement, attached as Ex. B to Johnson Aff.))  This agreement, which is executed by FRB, ECHO and Transcontinental (as "merchant"), enabled Transcontinental to accept credit-card payments from consumers for vehicle service contracts.  It was pursuant to this agreement that Transcontinental established the disputed reserve account:

> RESERVE ACCOUNT: As a condition of providing continued Services, Bank or ECHO may require Merchant to fund and maintain an interest bearing account . . . with [FRB] as security against any costs, losses or expenses incurred by Bank or ECHO in connection with the provisions of Services to Merchant.  Merchant hereby grants [FRB] or ECHO a security interest in such Reserve Account and the proceeds thereof, to secure the obligation of Merchant to

---

[2]  The FTC attached to its brief a Visa executive's declaration, filed in another case, that generally describes Visa's credit-card system.  According to the declaration — which neither ECHO nor FRB dispute — a Visa member-bank "may participate in the Visa system as a card-issuing bank that issues Visa bankcards to consumers, an 'acquiring bank' that signs up merchants to accept Visa bankcards as a method of payment, or both . . . .  Within the Visa system and as between and among the Visa Member banks, the acquirer bears full responsibility for each chargeback properly claimed by an issuer."  (Decl. of Gary Wilsey, attached as Ex. 2 to FTC's Resp. to ECHO's Obj., ¶¶ 5, 12.)

[3]  There is no evidence in the parties' submissions that FRB has made such an assignment, either before or after we appointed the receiver.

[FRB] or ECHO hereunder.  Bank or ECHO may enforce such
security interest without notice or demand.[4]

(Merchant Agreement ¶ 30; <u>see also</u> Acknowledgment of Reserve
Account at First Regional Bank, attached as Ex. C to Johnson Aff.
(opening the reserve account and requiring Transcontinental to fund
it with 5% of daily gross credit-card and check sales).)  The
Merchant Agreement's indemnification clause obligates
Transcontinental to indemnify FRB and ECHO against all "losses"
arising out of "credit Card, debit Card or Check transaction[s]
occurring at the Merchant's location (including any Chargebacks)."
(<u>Id.</u> at ¶ 32.)  The Merchant Agreement also grants ECHO a right of
"setoff" against "any and all fees or other funds owed ECHO by
[Transcontinental] under this agreement."  (<u>Id.</u> at ¶ 34.)

## DISCUSSION

### A.   ECHO'S OBJECTIONS TO THE RECEIVER'S MOTION

Funds held by financial institutions in Transcontinental's
name are receivership "assets" as our order defines that term.
(TRO at 3.)  At the hearing on ECHO's motion for relief we asked
the parties to address whether we could compel FRB to turn over the
reserve-account funds to the receiver while preserving ECHO's claim
to a perfected security interest in those funds.  The Bankruptcy

---

[4] The receiver suggests that this language should be read to grant either
FRB or ECHO a security interest in the account, but not both.  (Receiver's Resp.
to ECHO's Obj. at 3 n.2.)  Given that the Merchant Agreement requires
Transcontinental to indemnify both ECHO and FRB for "losses" (including
chargebacks), (Merchant Agmt. ¶ 32), we do not think that it makes sense to read
"or" in this context as indicating two mutually exclusive alternatives.

Code reconciles the tension between perfection established by possession and the bankruptcy trustee's right to recover property for the benefit of the estate by granting the creditor the right to request "adequate protection" for its interest. In re Colortran, Inc., 210 B.R 823, 827-28 (9th Cir. 1997) (*aff'd in part and rev'd in part on other grounds by* 165 F.3d 35 (9th Cir. 1998)). But the creditor must tender the collateral. Id. at 827; see also Thompson v. General Motors Acceptance Corp., 566 F.3d 699, 700 (7th Cir. 2009) (creditor who seized the debtor's car prior to the debtor's bankruptcy was required to return it to the debtor before seeking adequate protection). This is not a bankruptcy case, but we believe that the Bankruptcy Code is instructive in this instance. See L.R. 66.1 (The "administration of estates by receivers or other officers shall be *similar* to that in bankruptcy cases.") (emphasis added). ECHO argues that there is no "mechanism to seek adequate protection" in a non-bankruptcy case, (ECHO's Obj. at 5-6), but that does not prevent us from fashioning a comparable order. We may provide, for instance, that turnover does not affect the claims of either party to the funds' ultimate disposition. See In re Colortran, Inc. 210 B.R. at 828 ("When as here, the debtor disputes the validity or extent of the creditor's lien, [a stipulation of adequate protection] could merely provide that whatever rights [the creditor] had by virtue of its possession would be preserved and that the debtor does not waive its right to dispute the validity or

extent of the lien."); see also United States v. Arizona Fuels, 739
F.2d 455, 458-59 (9th Cir. 1984) (distinguishing between a
receiver's "interim possession" and the "ultimate merits of the
parties' claims to the property").  ECHO could then assert its
claim alongside the claims of other creditors as part of
Transcontinental's liquidation.  See Arizona Fuels, 739 F.2d at 458
("Receivership courts have the general power to use summary
procedure in allowing, disallowing, and subordinating the claims of
creditors.").

Although we conclude that perfection is not a proper defense
to the receiver's turnover motion, the parties have extensively
briefed that issue and we see no reason at this point to postpone
deciding it.  The parties agree that California's version of the
Uniform Commercial Code governs pursuant to the Merchant
Agreement's choice-of-law provision.  (Merchant Agreement ¶ 21.)
Section 9314(a) of the Code provides that a security interest in a
deposit account is perfected by "control."  See Cal.Com.Code §
9314(a).  A secured party, other than a bank, has control over a
deposit account if "[t]he debtor, secured party, and bank have
agreed in an authenticated record that the bank will comply with
instructions originated by the secured party directing disposition
of the funds in the deposit account without further consent of the
debtor."  Cal. Comm. Code § 9104(a)(2).  As the receiver points
out, only the Merchant Agreement is executed by all the required

parties: FRB, ECHO, and Transcontinental.  That agreement, which appears to be ECHO's form contract, does not require FRB to comply with ECHO's instructions.  ECHO argues that, in practice, FRB did comply with ECHO's instructions.  (ECHO Reply at 5-6.)  But under the statute control is established, if at all, only by an authenticated record executed by all the relevant parties.  Neither FRB nor ECHO cite any contrary authority.  We conclude that ECHO's security interest in the reserve account is unperfected and inferior to the receiver's interest.  <u>See</u> Cal. Comm. Code § 9317(a)(1) (A security interest is subordinate to the rights of a person that "becomes a lien creditor before the earlier of the time the security interest or agricultural lien is perfected."); <u>see also</u> <u>id.</u> at § 9102(53)(d) (Lien creditors include a "receiver in equity from the time of appointment.").  Its motion for relief from our order is denied and its objection the receiver's turnover motion is overruled.

### B.   FRB'S OBJECTIONS TO THE RECEIVER'S MOTION

This matter has been in an awkward posture from the start because the party to whom the receiver's turnover motion is directed — FRB — has largely sat on the sidelines.  As it concerns ECHO's interest, the bank's "statement of support" offers nothing of substance: only its "belief" that ECHO's interest is perfected.  (FRB's Stmt. ¶ 10.)  But it does assert its own interest in the account.  The Merchant Agreement grants FRB a security interest in

the reserve account, (Merchant Agreement ¶ 30), and that security interest is perfected under the UCC without any further documentation. Cal. Comm. Code § 9104(a)(1) ("A secured party has control of a deposit account if . . . [t]he secured party is the bank with which the deposit account is maintained."). It was perfected, moreover, *before* we appointed the receiver. (See FRB's Stmt. ¶ 13; Ack. of Reserve Acct., dated May 21, 2007.) FRB also contends that it has an equitable right to setoff its debt to Transcontinental against Transcontinental's obligation to compensate FRB for chargebacks. (See Merchant Agreement ¶ 32 (requiring Transcontinental to indemnify FRB for "losses" including chargebacks)); see Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 21 (1995)(A bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor.").[5] The receiver does not appear to dispute the substance of FRB's claims. Instead, it argues that we should apply the equitable doctrine of marshaling to require FRB to reimburse itself for chargebacks from ECHO's reserve account.[6] This is, in fact, what FRB has been doing since

---

[5] ECHO also claims a right of setoff, but it has not identified any mutual obligations between itself and Transcontinental. Cf. In re United Air Lines, Inc., 438 F.3d 720, 730 (7th Cir. 2006)("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'") (quoting Citizens Bank, 516 U.S. at 18).

[6] "[W]here a creditor has a lien on two funds in the hands of the same debtor and another creditor has a lien on only one of them, equity will compel the former to collect his debt out of that fund in his hands to which the latter cannot resort. The doctrine is an equitable one applicable only where both funds are in the hands of the common debtor of both creditors and where it can be applied with justice to all concerned and will be applied only when that can be done without prejudice to the paramount creditor...." In re Muir, 89 B.R. 157,

our order froze Transcontinental's account. But as the receiver candidly points out marshaling applies where "both funds are in the hands of the common debtor of both creditors." In re Muir, 89 B.R. at 160 (quoting Bolman, 244 P.2d at 1181). That is not the case here. There are several specific exceptions to this rule, but none of them apply to our facts. Id. at 161-62. The receiver argues that we should create an exception in this case because ECHO was "connected to the scheme that led to the Receivership." (Receiver's Surreply at 7.) ECHO and FRB are not alleged to have played any role in Transcontinental's scheme beyond providing credit card services. We do not think that this conduct warrants creating an exception to the common debtor rule.

We conclude, then, that FRB has a strong claim to the funds currently in Transcontinental's reserve account *insofar as* Transcontinental owes a debt to FRB. See Unisys Finance Corp. v. Resolution Trust Corp., 979 F.2d 609, 611 (7th Cir. 1992) ("A lien is parasitic on a claim. If the claim disappears-poof! the lien is gone."). This last point remains an open question. We do not know the total amount of chargebacks, or the full extent to which FRB has already made itself whole from ECHO's reserve account. According to FRB, it had withdrawn $231,339.87 from ECHO's reserve account as of July 25, 2009. It may well have made additional withdrawals in the interim. FRB's submission persuades us only

---

160 (D. Kans. 1988) (quoting Bolman v. Commercial National Bank of Kansas City, Kansas, 244 P.2d 1175, 1181 (1952)).

that FRB *may* have an interest in the reserve account superior to that of Transcontinental's other creditors (including injured consumers). We do not think that this is a sufficient basis to excuse FRB from complying with the plain terms of our order. We stress that our decision today decides only which party is entitled to interim possession of the funds, not which party is ultimately entitled to them. Moreover, our decision is without prejudice to any security interest or right of setoff FRB may have with respect to the account funds.

## CONCLUSION

The receiver's turnover motion (27) is granted. ECHO's objection to the receiver's turnover motion is overruled and its motion for relief from our order (31) is denied.


DATE:     December 22, 2009

ENTER:    _____

          John F. Grady, United States District Judge